UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NANCY SHAY,

                 Plaintiff,

       v.

BARBARA WALTERS,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 11-10932-GAO

Hon. George A. O'Toole, Jr.

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S</u> MOTION FOR JUDGMENT ON THE PLEADINGS

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 37th Floor
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

SUGARMAN, ROGERS, BARSHAK &
COHEN, P.C.
101 Merrimac Street, 9th Floor
Boston, Massachusetts 02114-4737
Telephone: 617.227.3030
Facsimile: 617.523.4001

*Attorneys for Defendant Barbara Walters*

July 8, 2011

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ALLEGATIONS AND BACKGROUND .................................................................. 3

ARGUMENT .............................................................................................................. 6

I.      Plaintiff's 28-Year-Old Tortious Interference Claim Is Time-Barred, Meritless, and Cannot Support the Exercise of Personal Jurisdiction ................................. 7

II.     Plaintiff's Defamation Claim Fails as a Matter of Law ..................................... 9

       A.      *Audition*'s Fleeting, First-Name References Do Not Identify Plaintiff to a "Considerable Segment in the Community" ......................................... 10

       B.      The Challenged Statements Do Not Discredit Plaintiff's Reputation ................. 12

       C.      The Challenged Statements Are True or Substantially True ............................... 15

       D.      Plaintiff Has Failed Entirely to Plead That the Challenged Statements Were Published With the Requisite Fault, or to Allege Any Supporting Facts Whatsoever ............................................................................................. 16

III.    Plaintiff's Duplicative Emotional Distress Claim Likewise Fails ................................. 18

       A.      Because Plaintiff's Defamation Claim Fails, Her Duplicative Emotional Distress Claim Must Also Fail ............................................................................ 18

       B.      Plaintiff Has Not Pled a Claim for Negligent Infliction of Emotional Distress ................................................................................................................ 19

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Albright v. Morton,*
321 F. Supp. 2d 130 (D. Mass. 2004) .................................................................. 19

*Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,*
267 F.3d 30 (1st Cir. 2001) ............................................................................. 4

*Amrak Prods., Inc. v. Morton,*
410 F.3d 69 (1st Cir. 2005) ................................................... 4, 6, 9, 10, 11, 12, 19

*Andresen v. Diorio,*
349 F.3d 8 (1st Cir. 2003) ............................................................................. 18

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ............................................................................... 6, 17

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................... 6

*Bose Corp. v. Consumers Union of U.S., Inc.,*
692 F.2d 189(1st Cir. 1982) ............................................................................ 16

*Brown v. Bank of Am. Corp.,*
No. 10 Civ. 11085, 2011 WL 1311278 (D. Mass. Mar. 31, 2011) ........................... 20

*Conley v. Romeri,*
60 Mass. App. Ct. 799 (Mass. App. Ct. 2004) ..................................................... 19

*Daley v. Aetna Life & Cas. Co.,*
734 A.2d 112 (Conn. 1999) .............................................................................. 7

*Damon v. Moore,*
520 F.3d 98 (1st Cir. 2008) ............................................................................. 13

*ELM Med. Lab., Inc. v. RKO Gen., Inc.,*
532 N.E.2d 675 (Mass. 1989) ........................................................................... 9

*Eyal v. Helen Broad. Corp.,*
583 N.E.2d 228 n.7 (Mass. 1991) ...................................................................... 9

*Flynn v. Hubbard,*
782 F.2d 1084 (1st Cir. 1986) ...................................................................... 3, 11

*Gertz v. Robert Welch, Inc.,*
418 U.S. 323 (1974) ................................................................................. 16, 17

*Herbert v. Lando,*
781 F.2d 298(2d Cir. 1986) ............................................................................. 14

*Kelly v. Loew's, Inc.,*
76 F. Supp. 473 (D. Mass. 1948) ...................................................................... 11

# TABLE OF AUTHORITIES
## (Cont'd.)

**Page**

*LaChance v. Herald*,
No. 2007-0034A, 2009 WL 3053543 (Mass. Super. Ct. Aug. 17, 2009) ................................ 19

*Lambert v. Providence Journal Co.*,
508 F.2d 656 (1st Cir. 1975) ...................................................................... 4, 12

*Mass. Nurses Ass'n v. N. Adams Reg'l Hosp.*,
396 F. Supp. 2d 30 (D. Mass. 2005) ............................................................. 3, 11

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496, 516 (1991) ............................................................................ 15

*Nat'l Ass'n of Gov't Emps. v. Cent. Broad. Corp.*,
396 N.E.2d 996 (Mass. 1979) ...................................................................... 14

*Noonan v. Staples, Inc.*,
556 F.3d 20 (1st Cir. 2009) ........................................................... 9, 15, 16, 17

*Payton v. Abbott Labs*,
437 N.E.2d 171 (Mass. 1982) .................................................................. 19, 20

*Pérez-Acevedo v. Rivero-Cubano*,
520 F.3d 26 (1st Cir. 2008) ........................................................................... 6

*Psy-Ed Corp. v. Klein*,
459 Mass. 697 (Mass. 2011) .......................................................................... 7

*Rinsky v. Trustees of Boston Univ.*,
No. 10 Civ. 10779-NG, 2010 WL 5437289 (D. Mass. Dec. 27, 2010) .................................... 20

*Rioux v. Barry*,
927 A.2d 304 (Conn. 2007) ............................................................................ 7

*Schofield v. Clarke*,
--- F. Supp. 2d ----, 2011 WL 846076 (D. Mass. 2011) ...................................... 20

*SEC v. Tambone*,
597 F.3d 436 (1st Cir. 2010) .................................................................... 6, 20

*Simmons Ford, Inc. v. Consumers Union of the U.S., Inc.*,
516 F. Supp. 742 (S.D.N.Y. 1981) ................................................................. 14

*Stanton v. Metro Corp.*,
438 F.3d 119 (1st Cir. 2006) ........................................................................ 13

*Stone v. Essex Cnty. Newspapers, Inc.*,
330 N.E.2d 161 (Mass. 1975) ........................................................................ 17

*Tartaglia v. Townsend*,
477 N.E.2d 178 (Mass. 1985) ........................................................................ 14

# TABLE OF AUTHORITIES
## (Cont'd.)

**Page**

*Taylor v. Swartwout,*
　445 F. Supp. 2d 98 (D. Mass. 2006)...................................................................... 15, 19

*United Truck Leasing Corp. v. Geltman,*
　551 N.E.2d 20 (Mass. 1990)..................................................................................... 7

*Wykeham Rise, LLC v. Federer,* No. LLICV084007541S, 2010 WL
　1544760 (Conn. Super. Ct. Mar. 24, 2010) ............................................................ 3


**Statutes**

Conn. Gen. Stat. § 52-577................................................................................................ 7

Mass. Gen. Laws ch. 223A § 3 ...................................................................................... 8

Mass. Gen. Laws ch. 231 § 92 ...................................................................................... 16

Mass. Gen. Laws ch. 260 § 2A ...................................................................................... 7


**Other Authorities**

Barbara Walters, *Audition: A Memoir* (2008).......................................... 4, 5, 12, 13, 15

Kirk Johnson, *The Talk of Washington, Conn.; Sedately, the Stones Roll
　Into a Small Town,* N.Y. Times,  July 19, 1989, at B1 ............................................ 3

Robert Sack, *Sack on Defamation* (2010).................................................................... 14

Ron Alexander, *School Information,* N.Y. Times, Oct. 25, 1982, at B4 .................... 11

*Would Your Child Do Better in a Private School?,*
　Changing Times, Feb. 1981, at 59 ......................................................................... 11


**Rules**

Rule 12(c) of the Federal Rules of Civil Procedure............................................. 1, 3, 6

Rule 201 of the Federal Rules of Evidence .......................................................... 3, 11

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure ............................................ 8

Defendant Barbara Walters respectfully submits this memorandum of law in support of her motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This lawsuit—arising from events that occurred nearly thirty years ago—violates the First Amendment rights of one of this country's most celebrated newswomen.  Plaintiff Nancy Shay seeks to transmute two sentences contained on a single page of Ms. Walters' 579-page memoir, *Audition*, into actionable defamation.  Plaintiff alleges that a reference to "Nancy" on page 381 of the memoir defamed her, even though:

- The book does not mention Plaintiff by her full name, nor provide sufficient descriptive detail for a reader to identify her;

- Plaintiff admits, as she must, that a large portion of the challenged statements is substantially true;

- Plaintiff does not challenge other statements in the memoir making substantially the same assertion as the statements about which she does complain; and

- Plaintiff makes no effort to show that the statements were made with any fault.

Even worse, Plaintiff attempts to inflate her meritless defamation claim by pleading time-barred and duplicative tag-along claims.  Each claim fails as a matter of law.  The complaint should be dismissed with prejudice.

Plaintiff's claims arise from events that occurred in 1983 at a now-defunct Connecticut boarding school.  Following an incident involving Ms. Walters' daughter, Plaintiff was expelled for misconduct.  Ms. Walters' daughter remained at the school.  Plaintiff appears to hold a grudge against the school and possibly others for this decades-old matter.

Twenty-five years later, Ms. Walters published a memoir entitled *Audition*.  Chapter 38 recounts Ms. Walters' difficult relationship with her daughter during her daughter's adolescence. Among the chapter's other reflections, Ms. Walters laments the effect her celebrity had on her child.  Toward the middle of the chapter, she provides an example.  In two sentences on page 381, Ms. Walters refers to the incident that led to Plaintiff's expulsion, mentioning only "Nancy" and carefully omitting other identifying details.  The fleeting reference is made in order to set up an observation by Ms. Walters that her daughter (who was not expelled) received special treatment, illustrating the impact of Ms. Walters' fame.

On these facts, Plaintiff asserts three claims.  First, she claims that Ms. Walters somehow caused the school to expel her in 1983, thus tortiously interfering with her student-school "contract."  Second, she claims that the two-sentence reference in *Audition* defamed her.  And third, she claims separate damages for the "emotional distress" that the allegedly "defamatory" statements in *Audition* caused her.  These claims are patently insufficient, and should be dismissed.

*Tortious Interference*.  This claim is plainly barred by the applicable three-year statute of limitations.  Even so, Plaintiff pleads nothing more than a bare recitation of the elements of her claim, offering no supporting factual allegations whatsoever.  And she pleads no relevant contacts with Massachusetts sufficient to support personal jurisdiction over Ms. Walters with respect to the claim.

*Defamation*.  This claim fails on multiple grounds.  Plaintiff admits in her complaint that a considerable portion of the two-sentence reference she complains of is *true*.  Moreover, she either pleads *no* facts suggesting fault or fails to plead fault entirely.  Finally, the challenged statements lack defamatory meaning as a matter of law.  Only an insignificant segment of the

community could possibly identify Plaintiff from the two, fleeting, first-name references in *Audition* that Plaintiff challenges. And the two-sentence statement Plaintiff complains of is wholly incapable of damaging her reputation.

*Negligent Infliction of Emotional Distress*. This wholly derivative claim merely re-labels Plaintiff's meritless defamation claim in an illegitimate attempt to boost her alleged damages, and is dismissable on that basis alone. The claim also fails on the merits. Plaintiff pleads no facts suggesting at all—let alone plausibly—that her claimed emotional distress is genuine, or that there is sufficient accompanying physical harm to objectively corroborate her claim.

Plaintiff has no cognizable claim against Ms. Walters, and the complaint should be dismissed with prejudice.

## ALLEGATIONS AND BACKGROUND

The following facts derive largely from Plaintiff's complaint, and are presumed true only as required by Rule 12(c) for purposes of this motion:

Plaintiff attended Connecticut's Wykeham Rise boarding school in the early 1980s.[1] Complaint ¶ 3. There, she was acquainted with defendant's daughter, classmate Jacqueline Guber Danforth. Though by her account a "popular student," while at Wykeham Rise, Plaintiff experienced disciplinary difficulties. She was ultimately expelled for misconduct. The incident that preceded her expulsion occurred in 1983 and involved Ms. Danforth—though Ms. Danforth

---

[1]      Pursuant to Rule 201 of the Federal Rules of Evidence, Ms. Walters respectfully requests that this Court take judicial notice of the fact that the Wykeham Rise school is no longer in operation, s*ee Wykeham Rise, LLC v. Federer*, No. LLICV084007541S, 2010 WL 1544760, at *1 (Conn. Super. Ct. Mar. 24, 2010) ("In May 1990, Wykeham Rise School (the school) sold its property (the school property) to HotelConsult SHCC (HotelConsult)."); Kirk Johnson, *The Talk of Washington, Conn.; Sedately, the Stones Roll Into a Small Town*, N.Y. Times,  July 19, 1989, at B1 (attached to Declaration of Orin Snyder, executed on July 8, 2011 ("Snyder Declaration")).  *See, e.g., Flynn v. Hubbard*, 782 F.2d 1084, 1087 n.1 (1st Cir. 1986) (taking judicial notice of fact that defendant's book "received a favorable review in the Sunday Book Review section of the New York Times"); *Mass. Nurses Ass'n v. N. Adams Reg'l Hosp.*, 396 F. Supp. 2d 30, 35 (D. Mass. 2005), *aff'd*, 467 F.3d 27 (1st Cir. 2006) (taking judicial notice of a newspaper article and a press release).

was not expelled.  Plaintiff never graduated from high school, falling into substance abuse and emotional instability.  Complaint ¶¶ 17–18.

Plaintiff alleges no involvement by Ms. Walters in her expulsion.

In 2008, Ms. Walters published a memoir entitled *Audition*.[2]  The book is a 579-page account of her life and career as an internationally known newswoman.  Chapter 38, "The Hardest Chapter to Write," is devoted to her daughter.  Ms. Walters recounts in that chapter the many difficulties she and her daughter faced over the course of her daughter's childhood.  She describes problems at school.  And she laments the negative effect her celebrity had on her child.  To set up a one-paragraph example towards the middle of the chapter, she refers to a "Nancy":

> Finally I realized that Jackie needed to get out of New York City. Lee and I agreed to send her to an all-girls boarding school in Connecticut (since closed). On the surface it was a lovely place. Pretty buildings. Lots of trees. The headmaster was out of a movie—English accent, tweeds, charming, sure he could help our little darling.  He couldn't.

> Jackie started to refuse to come home on weekends.  She had a new friend named Nancy, whom the school kicked out midterm for bad behavior.  She and Jackie had been found in the nearby town, high on God-knows-what.  My daughter, though, was not told to leave.  The school obviously didn't want to lose Barbara Walters's daughter.

Barbara Walters, *Audition: A Memoir* 381 (2008).  The memoir then goes on:

> After Nancy was expelled, we heard that once or twice, on a weekend, Jackie had gone to Boston to visit her.  When I got the name of Nancy's parents, her mother

---

[2]     Although at this stage the Court is not ordinarily permitted to consider documents outside the pleadings and attachments, "[t]here is . . . a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).  When, for example, "the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it."  *Id.*  The text of *Audition* fits this exception. It is "central to plaintiff's claim," repeatedly "referred to in the complaint," and undisputed in authenticity.  Its consideration at this stage is especially important because Massachusetts law requires that a publication containing an allegedly defamatory statement be read in its entirety to determine whether the individual statement is reasonably capable of defamatory meaning.  *See, e.g., Amrak Prods., Inc. v. Morton*, 410 F.3d 69, 73 (1st Cir. 2005); *Lambert v. Providence Journal Co.*, 508 F.2d 656, 658 (1st Cir. 1975).  The Court may therefore consider the book, the relevant pages of which are attached to the Synder Declaration.

> seemed not to know whether Jackie visited or not and said that Nancy, then
> fifteen, lived her own life. I told the school that Jackie was never to be allowed to
> visit again. I didn't know what else to do. If I took Jackie out of the school,
> where would I send her?

*Id.* "Nancy's" last name is omitted. And no further identifying characteristics are reported.

"Nancy" is mentioned only once more, a few pages later. The memoir there recounts the experience that precipitated Ms. Walters' decision to seek professional help for her daughter. The summer after the incident at Wykeham Rise, Ms. Danforth ran away from her summer program with "someone who, I later learned, was Nancy." *Id.* at 382. A frantic and harrowing search began. Four days later, Ms. Danforth and "Nancy" were found "in the [Midwestern] home of some guys they met. They were all stoned." *Id.* at 383. Plaintiff does not contest this account.

"Nancy" is not referred to again.

In April 2011, just days before the three-year statute of limitations was to expire, Plaintiff filed this lawsuit in Massachusetts state court. Plaintiff seeks $750,000 for three claims. Plaintiff seeks $250,000 for unspecified acts of tortious interference with her 1983 Wykeham Rise "contract." Plaintiff seeks $250,000 for Ms. Walters' allegedly libelous statements that a "Nancy" was kicked out of Wykeham Rise for "bad behavior" and being "high on God-knows-what." Plaintiff admits, however, that some of the cited statements are "arguably true," and she does not contest the memoir's assertion that she was later found "stoned." And Plaintiff seeks $250,000 for negligence, claiming that Ms. Walters' "breached the duty of care as someone charged with the truth under the laws of defamation" and thereby caused Plaintiff "emotional distress." Complaint ¶ 29. Ms. Walters removed the case to this Court on May 24, 2011.

## ARGUMENT

When deciding a Rule 12(c) motion seeking dismissal for failure to state a claim, this Court reviews the plaintiff's complaint for plausibility. *See, e.g.*, *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (noting that Rule 12(c) standard is same as Rule 12(b)(6) standard). Dismissal is warranted if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). Accordingly, a complaint must include more than "a formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); it must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 129 S. Ct. 1949. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (in banc) (citing *Twombly*, 550 U.S. at 555).

Although the Court assumes the truth of those factual allegations that are "well-pleaded," it does not accept as true any "legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949–50. Accordingly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

Courts do not hesitate to dismiss defamation claims where, as here, they contain fatal and incurable legal defects. *See, e.g.*, *Amrak Prods., Inc. v. Morton*, 410 F.3d 69, 72 (1st Cir. 2005).

I.  **Plaintiff's 28-Year-Old Tortious Interference Claim Is Time-Barred,
     Meritless, and Cannot Support the Exercise of Personal Jurisdiction**

In the first count of her complaint, Plaintiff asserts a claim for Ms. Walters' alleged

tortious interference—in 1983.  This *twenty-eight-year-old* claim is obviously barred by the

applicable three-year statute of limitations.  Conn. Gen. Stat. § 52-577; Mass. Gen. Laws ch. 260

§ 2A.[3]  Every alleged element of Plaintiff's claim occurred "around 1983," Complaint ¶ 3; no

relevant fact in the complaint occurred any later.  Plaintiff offers no excuse for waiting nearly

three decades to assert her wildly belated claim.  Indeed, she admits that she was, at the time the

alleged events occurred, "offered the services of a Washington, D.C. civil rights attorney," but

that she "declined the services."  Complaint ¶¶ 9–10.

Even so, Plaintiff alleges no facts at all supporting essential elements of her time-barred

tortious interference claim.  To establish tortious interference, she must establish, among other

things, the existence of a contract with Wykeham Rise, Ms. Walters' intentional interference

with that contract by some improper means or with some improper motive, and some loss

resulting from the interference.[4]  *E.g. Psy-Ed Corp. v. Klein*, 459 Mass. 697, 715–16 (Mass.

2011); *Rioux v. Barry*, 927 A.2d 304, 312 (Conn. 2007); *Daley v. Aetna Life & Cas. Co.*, 734

A.2d 112, 134–35 (Conn. 1999); *United Truck Leasing Corp. v. Geltman*, 551 N.E.2d 20, 21, 23

(Mass. 1990).  Yet Paragraphs 19–24 of the complaint merely recite these elements without

elaboration.  At no point does she allege any supporting facts whatsoever.  She pleads, for

example, that "Wykeham Rise School and Nancy Shay enjoyed a contractual relationship."

Complaint ¶ 19.  But she alleges no frustrated contractual expectation: no flouted disciplinary

---

[3]      Whether the cause of action accrued in Massachusetts or Connecticut, because both states apply a three-year statute of limitations to tortious interference claims, there is no conflict of laws here.
[4]      These are elements on which both Massachusetts and Connecticut law agree, and so there is no conflict of laws on this point.

procedure, for example, or broken promise of continued enrollment.  She pleads that "Defendant induced a party to the relationship to breach the relationship." *Id.* ¶ 21.  She alleges, however, no involvement by Ms. Walters in her expulsion, and no basis for concluding that her discipline was anything other than the unilateral and independent action of the school.  At most she alleges a "motive to separate [Plaintiff] and Jackie Guber" without any allegation that Ms. Walters took any action whatsoever to effectuate that motive.  *Id.* ¶ 16.  Indeed, she alleges nothing unusual at all about her expulsion.  This is plainly insufficient.

Plaintiff's tortious interference claim also fails for an independent reason.  Plaintiff alleges no claim-related contacts with Massachusetts sufficient to confer personal jurisdiction over Ms. Walters with respect to the claim.  Chapter 223A, Section 3, of the Massachusetts General Laws (made operative in this Court by Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure) requires that a court obtain specific personal jurisdiction over the defendant with respect to each claim separately.  The court is authorized only to "exercise personal jurisdiction over a person . . . *as to a cause of action in law or equity arising from the person's* [*relevant contacts*]".  Mass. Gen. Laws ch. 223A § 3 (emphasis added).  Yet Plaintiff pleads no relevant contacts whatsoever.  She alleges no injury in Massachusetts.  To the contrary, the entirety of her tortious interference cause of action, up to and including the allegedly induced expulsion, occurred in Connecticut.  And even if she did allege such injury, an "act or omission outside [Massachusetts]" that "caus[es] tortious injury in [the State]" can support personal jurisdiction only if the defendant [1] "regularly does or solicits business" in Massachusetts; [2] "engages in any other persistent course of conduct" in the State; or [3] "derives substantial revenue from goods used or consumed or services rendered" there.  *Id.*  Plaintiff pleads none of these contacts.

## II.   Plaintiff's Defamation Claim Fails as a Matter of Law

Massachusetts law disfavors defamation claims. *Eyal v. Helen Broad. Corp.*, 583 N.E.2d 228, 231 n.7 (Mass. 1991). Courts favor their early termination in order to "protect First Amendment rights, as the costs of litigation may induce an unnecessary and undesirable self-censorship." *ELM Med. Lab., Inc. v. RKO Gen., Inc.*, 532 N.E.2d 675, 680 (Mass. 1989) (internal quotation marks omitted). This lawsuit seeks damages without any allegation of fault for admittedly true statements published with no identifying information. It exemplifies the threat to free speech that Massachusetts courts hope to avoid.

Under Massachusetts law, a defamation plaintiff must prove (among other things) fault, falsity, and defamatory meaning: "To prevail in a defamation claim, plaintiffs must establish that 'defendants were at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community . . . .'" *Amrak Prods.*, 410 F.3d at 72 (quoting *White v. Blue Cross & Blue Shield of Mass., Inc.*, 809 N.E.2d 1034, 1036 (Mass. 2004)). A true statement is actionable only if the defendant acted with actual malice. *E.g. Noonan v. Staples, Inc.*, 556 F.3d 20, 26 (1st Cir. 2009). And a statement lacks defamatory meaning if it cannot damage the plaintiff's reputation in a "considerable segment in the community"—either because the statement would not "hold the plaintiff up to scorn, hatred, ridicule or contempt," or because an insufficient number of people would identify the plaintiff as the statement's subject. *Amrak Prods.*, 410 F.3d at 72.

Plaintiff fails to plausibly plead any of these elements. The challenged statements are entirely lacking in defamatory meaning. The segment of the community that could actually identify Plaintiff from the book's fleeting, first-name references is infinitesimal. And even were a reader to identify her, the challenged statements would not damage her reputation, especially

given that she leaves undisputed nearly identical statements appearing just pages later.

Moreover, Plaintiff admits that a considerable portion of the two-sentence reference she

complains of is *true*.  Complaint ¶ 25.  Yet she pleads no facts whatsoever suggesting that Ms.

Walters published the admittedly true portion maliciously.  And as for the portion that Plaintiff

claims actually is false, the complaint fails even to *plead* fault.  This is a paradigmatic case for

dismissal on the pleadings.

### A.     *Audition*'s Fleeting, First-Name References Do Not Identify Plaintiff to a "Considerable Segment in the Community"

To be defamatory, a statement must be understood by a "considerable . . . segment in the

community" to disparage the plaintiff rather than someone else.  *E.g. Amrak Prods.*, 410 F.3d at

72–73.  If only a small group would understand the plaintiff to be a statement's subject, that

statement is incapable of damaging the plaintiff's reputation and is therefore not actionable.  *Id.*

"[W]hether a communication is reasonably susceptible of a defamatory meaning[] is a question

of law for the court."  *Id.* at 72 (citing *Phelan v. May Dep't Stores Co.*, 819 N.E.2d 550, 554

(Mass. 2004)).

In *Amrak Productions Inc. v. Morton* for example, the First Circuit affirmed dismissal of

a defamation claim because the number of people who would have connected the alleged

defamatory statement with the plaintiff was too small.  410 F.3d at 73.  Plaintiff was bodyguard

to Madonna, the famous singer.  Defendant had mistakenly identified the plaintiff as the subject

in a photograph of Jose Guitierez, an "outspoken homosexual" and member of Madonna's

entourage.  *Id.* at 71.  The plaintiff argued that the miscaptioned image defamed him by

identifying him as a homosexual.  *Id.*  Affirming the district court, the First Circuit held that the

miscaptioned photograph was "not reasonably susceptible to defamatory meaning" because the

photograph would lead only an insufficient number of people to identify plaintiff as a

10

homosexual. *Id.* at 73.  To draw that inference, a reader would have to recognize Jose Guitierez as a homosexual and understand from the picture and caption that the picture's subject was the plaintiff.  "Few, if any, readers would fall into this 'considerable and respectable segment in the community.'"  *Id.*

The insufficiency is even more acute here.  Plaintiff acknowledges that the group capable of identifying her from the memoir's fleeting references is small: Her complaint alleges only that she[5] and "former Wykeham Rise students" could recognize her as the challenged statements' subject.  Complaint ¶ 26.  But even that limited allegation implausibly overstates the number of people who could actually identify Plaintiff from *Audition*'s references.  Plaintiff's classmates at Wykeham Rise numbered fewer than two dozen.[6]  And the memoir entirely omits "Nancy's" last name.  Identifying one "Nancy" among many without the benefit of a surname is difficult enough.  But *Audition* also mentions no physical characteristics, no personal background, and nothing at all about "Nancy's" pre-expulsion tenure at Wykeham Rise by which a "former Wykeham Rise student" might place "Nancy."  And, importantly, nearly thirty years have passed since the events referenced in the book.  The unsuccessful plaintiff in *Amrak Productions* was named in full, and was identified as the subject of an image that was associated with a contemporary celebrity known to millions.  *Amrak Prods.*, 410 F.3d at 71–73.  "Nancy" is a first name without descriptive detail, and is identified only with fleetingly referenced events that

---

[5]     It is "obviously . . . improper to use plaintiff's personal reaction" to demonstrate defamatory meaning. *Kelly v. Loew's, Inc.*, 76 F. Supp. 473, 486 (D. Mass. 1948).
[6]     Pursuant to Rule 201 of the Federal Rules of Evidence, Ms. Walters respectfully requests that this Court take judicial notice of the fact that Wykeham Rise's student body in the early 1980s was around eighty students (twenty per class), *see* Ron Alexander, *School Information*, N.Y. Times, Oct. 25, 1982, at B4 (attached to Snyder Declaration); *Would Your Child Do Better in a Private School?*, Changing Times, Feb. 1981, at 59, 61 (attached to Snyder Declaration).  *See, e.g.*, *Flynn*, 782 F.2d at 1087 n.1 (taking judicial notice of fact that defendant's book "received a favorable review in the Sunday Book Review section of the New York Times"); *Mass. Nurses Ass'n*, 396 F. Supp. 2d at 35 (taking judicial notice of a newspaper article and a press release).

occurred decades ago and that were known even then, at best, to only a handful of people.  To

understand Plaintiff to have been the subject of the challenged statements, a "former Wykeham

Rise student"—already among a tiny group—would have to have sufficient recollection of her

time at the school to remember and identify a "Nancy" who never graduated—without aid of

surname, physical description, or personal detail.  "Few, if any, readers would fall into this

'considerable and respectable segment in the community.'"  *Id.* at 73.  Indeed, Ms. Walters is

aware of no case in which defamation liability has been imposed for such a fleeting, first-name-

only reference.

### B.      The Challenged Statements Do Not Discredit Plaintiff's Reputation

A statement must "hold the plaintiff up to scorn, hatred, ridicule or contempt" to be

defamatory.  *Id.* at 72.  Whether a challenged statement meets that test is a question of law for

the court.  *Id.*  When making its determination, "'[t]he court [must] examine the statement in its

totality in the context in which it was uttered or published.'"  *Id.* at 73 (quoting *Myers v. Boston

Magazine Co.*, 403 N.E.2d 376, 379 (Mass. 1980)).  And the publication in which the statement

was made must be read in its entirety to determine whether the individual statement is reasonably

capable of defamatory meaning.  *Lambert v. Providence Journal Co.*, 508 F.2d 656, 658 (1st Cir.

1975).  The statement must be interpreted "'reasonably,'" and is not defamatory unless it would

hold the plaintiff up to scorn, hatred, ridicule or contempt in the eyes of a "'reasonable reader.'"

*Amrak Prods.*, 410 F.3d at 72 (quoting *Foley v. Lowell Sun Publ'g Co.*, 533 N.E.2d 196, 197

(Mass. 1989) (internal quotation marks omitted)).  The challenged statements here fail this test.

*Audition* is a 579-page memoir, thirteen pages of which are devoted to Ms. Walters'

daughter and their "extremely difficult" relationship during Ms. Danforth's adolescence.

*Audition* at 376–88.  "I would probably not have written about this at all," Ms. Walters

confesses, "but Jackie feels that it is very important for people to understand what she and I went through because, she hopes, it may help others." *Audition* at 376.  Of those thirteen pages, "Nancy" is referenced sporadically in only five paragraphs—and Plaintiff complains about only two sentences.  Complaint ¶¶ 12–16.  Those two sentences are entirely incidental to the chapter's focus: the struggles of a difficult mother-daughter relationship.  The references merely provide minimally necessary details for a story about Ms. Walters and her daughter.  *Cf. Stanton v. Metro Corp.*, 438 F.3d 119, 129 (1st Cir. 2006) (recognizing that defamatory construction depends on the "whole scope and the apparent object of the writer").  And the references are only made as necessary to tell Ms. Walters' story, carefully omitting "Nancy's" last name and other identifying features.  No reasonable reader would read *Audition* with any attention to such a banal, boring, and unelaborated background detail; and no reasonable reader would therefore think twice about "Nancy," let alone whether *Audition*'s fleeting references defamed the named Plaintiff in this case.

Unsurprisingly given its purpose, a considerable portion of the two-sentence reference Plaintiff challenges is so vague as to be nearly meaningless—the antithesis of defamatory. Plaintiff complains about the statement, "Nancy . . . [was] kicked out midterm for bad behavior." This statement is relatively innocuous without more.  *Cf. Damon v. Moore*, 520 F.3d 98, 105–06 (1st Cir. 2008) (A forced or strained construction of the statement does not suffice to state a claim for defamation.).  It does not define "bad behavior."  As written, the statement simply means that "Nancy" was expelled for disciplinary misconduct rather than poor academic performance—a fact that Plaintiff concedes is true.  Complaint ¶ 25.  A reasonable reader could understand it to refer to excessive truancy just as easily as to anything else—hardly the sort of claim that holds a person up to "scorn, hatred, ridicule or contempt."  By itself, the statement is

13

simply too imprecise, vague, and "amorphous, . . . rather than specific and significant" to be defamatory. *Tartaglia v. Townsend*, 477 N.E.2d 178, 181 (Mass. 1985); *see also Nat'l Ass'n of Gov't Emps. v. Cent. Broad. Corp.*, 396 N.E.2d 996, 1001–02 (Mass. 1979) (holding that charges of "communist" and "communism" were "[t]oo amorphous a characterization to be actionable" and "too vague to be cognizable as the subject of a defamation" claim).

Furthermore, although Plaintiff complains that *Audition* says she used drugs, she leaves entirely unchallenged a later statement asserting substantially the same conduct—just two pages after.  Plaintiff is satisfied that *Audition* says she was "stoned" in the summer of 1983; she complains that the book says she was "high" that winter.  This is not defamation.  The disputed statement caused Plaintiff no cognizable harm that was not also caused by a statement she allows was accurate and appropriate.

"[I]f a communication contains enough true or unchallenged derogatory material about the plaintiff so that additional defamatory statements of questionable accuracy do not add materially to the overall defamatory impact of the statement, the publication is not actionable." Robert Sack, *Sack on Defamation* § 2.4.18 (2010); *see also Herbert v. Lando*, 781 F.2d 298, 311 (2d Cir. 1986) (explaining that the doctrine "measures the incremental harm inflicted by the challenged statements beyond the harm imposed by the rest of the publication.  If that harm is determined to be nominal or nonexistent, the statements are dismissed as not actionable."); *Simmons Ford, Inc. v. Consumers Union of the U.S., Inc.*, 516 F. Supp. 742, 750 (S.D.N.Y. 1981) ("[T]he portion of the article challenged by plaintiffs[] could not harm their reputations in any way beyond the harm already caused by the remainder of the article.").

This case exemplifies the principle.  Although Plaintiff complains that *Audition* asserted she was "high" sometime during the 1983 school year, just two pages after the statement Plaintiff

complains of, *Audition* reports that Jackie and "Nancy" "hitchhiked across the country, ending up in the home of some guys they met," and states, "[t]hey were all stoned." *Audition* at 383. Plaintiff leaves this later statement entirely unchallenged, even though it would have had exactly the same effect on any *Audition* reader that the challenged statement had. Plaintiff can hardly claim to have been wronged by one statement when she endorses a substantially identical statement later in the same story. Once a reader has read the unchallenged statement, any defamatory effect of the challenged statement is entirely nil

### C.     The Challenged Statements Are True or Substantially True

"The lodestar of Massachusetts defamation law is the axiom that truth is an absolute defense to defamation." *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 102 (D. Mass. 2006). A statement need not be strictly true to be protected; "substantial truth is all that is required." *Noonan*, 556 F.3d at 28; *see generally Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) ("The common law of libel takes but one approach to the question of falsity. . . . It overlooks minor inaccuracies and concentrates upon substantial truth."). A statement is substantially true unless it "'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson*, 501 U.S. at 517 (quoting Robert Sack, *Libel, Slander, and Related Problems* 138 (1980)).

Plaintiff concedes that "the statement, '. . . Nancy, whom the school kicked out midterm for bad behavior,'" is "arguably true." Complaint ¶ 25. Absent actual malice, true statements are not actionable as a rule. *Noonan*, 556 F.3d at 26.

Plaintiff alleges that the statement nevertheless misleads when read in conjunction with the sentence that follows, by suggesting that she was expelled for drug use. She claims that she was expelled for a different reason. Complaint ¶ 13. This is an artful attempt to falsely charge

15

Ms. Walters' admittedly true statement with the allegedly defamatory impact of a different statement. Any defamatory impact from an assertion that Plaintiff was expelled for using drugs comes from the allegation of drug use, not from the assertion that expulsion resulted. It adds nothing to the allegation of drug use to say she was expelled for it, just as it adds nothing to an allegation of boorishness to say it was noticed. Whether punished or not, the conduct is the same.

### D. Plaintiff Has Failed Entirely to Plead That the Challenged Statements Were Published With the Requisite Fault, or to Allege Any Supporting Facts Whatsoever

Fault is an absolute, irreducible minimum required by the First Amendment. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342–47 (1974). The requirement of fault is necessary to "assure to the freedoms of speech and press that 'breathing space' essential to their fruitful exercise." *Id.* at 342. Yet on every count, the complaint either fails entirely to substantiate Plaintiff's claim with factual allegations plausibly suggesting fault, or ignores the fault standard altogether.

Because truth is an absolute defense to defamation, a true statement is actionable only if the plaintiff proves that "the defendant acted with 'actual malice' in publishing the statement." *Noonan*, 556 F.3d at 26; Mass. Gen. Laws ch. 231 § 92. Demonstrating "actual malice" requires a plaintiff to prove that the defendant acted with "ill will" or "malevolent intent."[7] *Noonan*, 556 F.3d at 29. A court will infer actual malice, a legal conclusion, from "objective facts." *Bose Corp. v. Consumers Union of U.S., Inc.*, 692 F.2d 189, 196 (1st Cir. 1982).

---

[7]   "Actual malice" in this context does not carry the "specialized meaning" developed in the context of the Supreme Court's First Amendment jurisprudence. *Noonan*, 556 F.3d at 28–29.

Although Plaintiff pleads in conclusory fashion that Ms. Walters published her admittedly true statement with "ill-will [sic] or actual malice," Complaint at ¶ 25, the pleading is utterly lacking in supporting allegations of fact. Plaintiff does not allege, for example, any facts suggesting that Ms. Walters undertook to publish *Audition* in order to humiliate her. *Cf. Noonan*, 556 F.3d at 25–29 (allowing the issue of "actual malice" to reach a jury because there were facts suggesting that defendant singled out plaintiff in order to humiliate him). Indeed, Plaintiff nowhere alleges that Ms. Walters did anything out of the ordinary at all. Instead, Plaintiff weakly proffers Ms. Walters' irrelevant long-ago parental motivation to protect her daughter. But that Ms. Walters is alleged to have had "a strong motive to *separate*" the two girls—in 1983—in no way pleads that she had a strong motive to *defame* Plaintiff, in 2008. Complaint ¶ 16 (emphasis added). Plaintiff's complete failure to allege any facts from which this Court or anyone could reasonably conclude that Ms. Walters maliciously published the challenged statements compels dismissal of her claim. *See Iqbal*, 129 S. Ct. at 1952, 1954 (rejecting argument that intent could be plead with a conclusory allegation, and holding that claim should be dismissed because "respondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind"). *Audition* is a memoir, not a diatribe.

Nor does Plaintiff allege any fault at all even for those statements she claims are false. Fault is a constitutional requirement; and to justify recovery, Plaintiff must prove negligence. *Gertz*, 418 U.S. at 342-47 (holding that "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual" because of the "breathing space" required to protect freedom of expression); *Stone v. Essex Cnty. Newspapers, Inc.*, 330

N.E.2d 161, 168 (Mass. 1975) (interpreting *Gertz* to require that "private persons . . . may recover compensation on proof of *negligent* publication of a defamatory falsehood"). Yet Plaintiff omits to plead fault entirely.

Moreover, there is not a single factual allegation in Plaintiff's complaint that would support such a pleading of fault even if it *had* been made. *Cf. Andresen v. Diorio*, 349 F.3d 8, 20–21 (1st Cir. 2003) (affirming dismissal of a defamation claim because the plaintiff failed to plead "negligence or deliberate falsehood" and the facts "alleged in the complaint did not support an inference of fault."). Instead, Plaintiff would have this Court allow her claim to proceed in flagrant violation of Ms. Walters' constitutional rights without any allegations of fault or culpable conduct whatsoever. Plaintiff's failure to plead an essential element or supporting facts renders her complaint *per se* deficient.

## III.   Plaintiff's Duplicative Emotional Distress Claim Likewise Fails

Plaintiff's "emotional distress" claim is a plain duplicate of her defamation claim. That alone renders it dismissable under Massachusetts law. Even so, Plaintiff fails entirely to plead facts plausibly showing either that her subjective claim of "emotional distress" is genuine or that she can objectively corroborate it by showing physical harm. Dismissal is warranted on either or both grounds.

### A.   Because Plaintiff's Defamation Claim Fails, Her Duplicative Emotional Distress Claim Must Also Fail

In Count III, Plaintiff transparently attempts to plead a duplicative defamation claim in the guise of negligence. The claim arises from the same alleged conduct and the same alleged harm. Plaintiff requests identical relief. And Plaintiff even pleads that Ms. Walters "breached the duty of care as someone charged with the truth under the laws of defamation," and seeks compensation for "loss of reputation." Complaint ¶¶ 29, 31.II.

Massachusetts courts routinely reject such pleading stunts out of hand.  *See, e.g.*, *Amrak Prods.*, 410 F.3d at 73 (dismissing plaintiff's "derivative" claim of negligent infliction of emotional distress after affirming judgment granting motion to dismiss defamation claim).  As a matter of law, speakers owe no duty to anyone for non-defamatory statements; and emotional "harm" caused by non-defamatory statements is unreasonable (and therefore not actionable) almost *per se*.  *Albright v. Morton*, 321 F. Supp. 2d 130, 134, 141 (D. Mass. 2004) (holding that book publishers owed no duty to the plaintiff to accurately label the book's photograph when so doing did not constitute defamation, and stating that "[w]ithout a viable defamation claim, it would be difficult to find that a reasonable person would have suffered emotional distress under the circumstances.").  These deficiencies require dismissal.  *See, e.g.*, *Conley v. Romeri*, 60 Mass. App. Ct. 799, 801 (Mass. App. Ct. 2004) (Where a complaint fails to "identify any legally cognizable duty between parties," dismissal is required.); *cf. LaChance v. Herald*, No. 2007-0034A, 2009 WL 3053543 (Mass. Super. Ct. Aug. 17, 2009), *aff'd*, 942 N.E.2d 185, 187 n.4 (Mass. App. Ct. 2011) (dismissing emotional distress claim on summary judgment because "none of the statements contested . . . [is] actionable [in defamation]" and plaintiff's emotional distress claim "rest[s] exclusively on the statements he alleges are libelous.").

**B.      Plaintiff Has Not Pled a Claim for Negligent Infliction of Emotional Distress**

Even viewed independently, Plaintiff's emotional distress claim fails.  Plaintiff must prove at least five elements to recover for negligent infliction of emotional distress: (1) the defendant's negligence; (2) emotional distress; (3) causation; (4) objective corroboration by physical harm; and (5) that a reasonable person would have suffered emotional distress under the circumstances.  *E.g. Taylor*, 445 F. Supp. 2d at 105 (citing *Conley v. Romeri*, 60 Mass. App. Ct. 799, 801, 806 (Mass. App. Ct. 2004)); *Payton v. Abbott Labs*, 437 N.E.2d 171, 181 (Mass.

1982).  Yet she does not even attempt to plead supporting facts on many of her claim's elements, let alone facts that would plausibly show her entitlement to relief.

Although Plaintiff's complaint makes fleeting reference to "depression," "alcoholism," and "agoraphobia," she offers no examples of her "distress" nor details any ill effects, nor indeed does she provide any facts from which one could conclude that her claims are genuine.  Littering a complaint with medical jargon does not transmute conclusory allegations of "emotional distress" into a plausible claim.  *Cf. Tambone*, 597 F.3d at 442 ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal.").

Moreover, although Plaintiff must allege physical harm sufficient to provide "objective corroboration of the emotional distress alleged," *Payton*, 437 N.E.2d at 181, she fails to plead *any* objective corroboration of the "emotional distress" she claims.  This alone is enough to render her claim fatally deficient.  *See, e.g.*, *Brown v. Bank of Am. Corp.*, No. 10 Civ. 11085, 2011 WL 1311278, at *5 (D. Mass. Mar. 31, 2011); *Schofield v. Clarke*, --- F. Supp. 2d ----, 2011 WL 846076, at *8 (D. Mass. 2011); *Rinsky v. Trustees of Boston Univ.*, No. 10 Civ. 10779-NG, 2010 WL 5437289, at *10 (D. Mass. Dec. 27, 2010).

## **CONCLUSION**

For all of these reasons, Ms. Walters respectfully requests that the Court dismiss Plaintiff's complaint with prejudice.

Dated: New York, New York
       July 8, 2011

                              GIBSON, DUNN & CRUTCHER LLP

                              By:  /s/   Orin Snyder

                              Orin Snyder (admitted *pro hac vice*)
                              Christopher Muller (admitted *pro hac vice*)
                              200 Park Avenue, 37th Floor
                              New York, New York 10166-0193
                              Telephone: (212) 351-4000
                              Facsimile: (212) 351-4035

                              William F. Benson
                              Sugarman, Rogers, Barshak & Cohen, P.C.
                              101 Merrimac Street
                              Boston, Massachusetts 02114
                              Telephone: (617) 227-3030
                              Facsimile: (617) 523-4001

                              *Attorneys for Defendant Barbara Walters*


                    <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that on July 8, 2011, a true copy of the above document was filed through
the EFC system and will be sent electronically to the registered participants as identified on the
Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered
participants.


                              /s/ Orin Snyder
                              Orin Snyder (admitted *pro hac vice*)