UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------- x
: 
NANCY SHAY, :
:
        Plaintiff, :
: Civil Action No. 11-10932-GAO
  v. :
: Hon. George A. O'Toole, Jr.
BARBARA WALTERS, :
:
        Defendant. :
:
:
:
------------------------------------- x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

*LEAVE TO FILE REPLY GRANTED ON JULY 25, 2011*

> GIBSON, DUNN & CRUTCHER LLP
> 200 Park Avenue, 37th Floor
> New York, New York 10166-0193
> Telephone:  212.351.4000
> Facsimile:   212.351.4035
>
> SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
> 101 Merrimac Street, 9th Floor
> Boston, Massachusetts 02114-4737
> Telephone:  617.227.3030
> Facsimile:   617.523.4001
>
> *Attorneys for Defendant Barbara Walters*

August 8, 2011

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.   Plaintiff Is Not Entitled to Equitable Tolling..................................................................... 3

II.  Plaintiff Is Not Subject to Personal Jurisdiction in Massachusetts Based on Her
     Employment by ABC in the Early 1980s .......................................................................... 5

III. The Softcover Name Change Limits the Class of Readers Who Could Have
     Identified Nancy to Hardcover Readers............................................................................. 6

CONCLUSION............................................................................................................................... 7

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amrak Prods., Inc. v. Morton*,
  410 F.3d 69 (1st Cir. 2005) .................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 3

*Bernier v. The Upjohn Co.*,
  144 F.3d 178 (1st Cir. 1998) ............................................................................... 3, 4

*Interface Group-Massachusetts, LLC v. Rosen*,
  256 F. Supp. 2d 103 (D. Mass. 2003) ..................................................................... 6

*Koe v. Mercer*,
  876 N.E.2d 831 (Mass. 2007) ................................................................................. 3

*One Star v. Sisters of St. Francis, Denver, Colo.*,
  752 N.W.2d 668 (S.D. 2008) .................................................................................. 4

*Rakes v. United States*,
  442 F.3d 7 (1st Cir. 2006) ....................................................................................... 4

*Smith v. Estate of Kelly*,
  778 A.2d 1162 (N.J. Super. Ct. App. Div. 2001). .................................................. 4

*Stadtman v. Cambere*,
  422 N.Y.S.2d 102 (N.Y. App. Div. 1979) .............................................................. 4

*Steo v. Cucuzza*,
  624 N.Y.S.2d 203 (N.Y. App. Div. 1995) .............................................................. 4

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,
  524 F.3d 315 (1st Cir. 2008) ................................................................................... 6

*World Boxing Council v. Cosell*,
  715 F. Supp. 1259 (S.D.N.Y. 1989) ....................................................................... 7

**Statutes**

Mass. Gen. Laws ch. 223A § 3 .................................................................................... 5

**Rules**

Rule 407 of the Federal Rules of Evidence ................................................................. 7

Defendant, Barbara Walters, respectfully submits this reply memorandum of law in support of her motion for judgment on the pleadings.

## PRELIMINARY STATEMENT

Plaintiff's opposition confirms that she has no case—and that this misguided lawsuit is motivated by a perceived injustice suffered in Plaintiff's adolescence, nearly thirty years ago. Plaintiff claims that her boarding school expulsion—at age 16—caused her "a hopeless life of depression, suicide attempts, and alcoholism." Opp. at 5.[1] And now, "after so many years, the plaintiff seeks to right the wrongs that befell her." Opp. at 5. The allegedly "defamatory" statements in *Audition* "brought up [that injury] anew." Opp. at 6.

None of this has anything to do with any actionable conduct on the part of Barbara Walters. In 1983, Ms. Walters is alleged to have asked her daughter's boarding school to prevent her from seeing the expelled plaintiff; she was a negative influence; the two had run into disciplinary problems together. Plaintiff seizes on this as evidence of some nefarious "motive to separate" the two girls. Opp. at 6. And from that alone, she now claims that Ms. Walters somehow caused her expulsion, speculating that discovery will reveal the method of Ms. Walters' purported "interference." This Court is asked to indulge her.

The defamation and negligence claims are equally without merit. These defective claims are merely vehicles of Plaintiff's decades-old grudge, and her opposition makes their lack of merit all the more stark. *Audition* does not mention the name of the school from which Plaintiff was expelled, or her last name, or any other identifying detail. Those are supplied only by Plaintiff's complaint. Moreover, Plaintiff concedes now that the softcover edition concealed

---

[1] References to "Opp." are to Plaintiff's opposition brief filed in response to Ms. Walters' motion for judgment on the pleadings.

1

even her *first* name. A reader of Ms. Walters' hardcover memoir would know only that a "Nancy" who attended some boarding school in Connecticut in the early 1980s was expelled for misconduct—nothing more. A reader of the softcover would know even less. Had Plaintiff not identified herself in her complaint, and made statements to the press, no reader would ever have known who "Nancy" is.

Federal pleading rules were designed to prevent precisely this sort of unsupported, unsupportable, and legally deficient claim.

Disputing none of the controlling legal elements or standards, Plaintiff offers three principal arguments in opposition to Ms. Walters' motion for judgment on the pleadings—none with merit. <u>One</u>, Plaintiff argues that the statute of limitations should be tolled because Ms. Walters allegedly "instructed" her to remain silent 28 years ago; but cites no case accepting such an outlandish argument and alleges no threat that would justify an indefinite (now nearly three decades long) toll. <u>Two</u>, Plaintiff argues that personal jurisdiction is proper here because Ms. Walters contributed to a television show broadcast in Massachusetts; but Plaintiff alleges no real connection between the claimed tortious interference and Ms. Walters' television appearances, and provides no reason why Ms. Walters should be haled into court on the basis of her employer's actions. And <u>three</u>, Plaintiff cites and relies on inadmissible and irrelevant evidence outside the pleadings as evidence of identifiability—to no avail.

This Court should dismiss the complaint with prejudice.

## **ARGUMENT**

Plaintiff does not dispute the elements of her claims or the governing legal standards. Instead, she claims that she has pled the undisputed elements and that her allegations meet the agreed-upon standards—generally without supporting citation. She excuses fatal pleading

2

deficiencies by asserting that the complaint was "constructed in haste to meet the three-year statute of limitations,"[2] Opp. at 9, and that supporting evidence will issue during discovery, Opp. at 7, 9, 12. The Federal Rules aim to cull such speculative claims at the pleading stage. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557–58 (2007) (Rule 8's requirement that a pleading "possess enough heft to show that the pleader is entitled to relief" is designed to prevent a plaintiff with "a largely groundless claim" from "tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." (brackets and internal quotation marks omitted)).

## I. Plaintiff Is Not Entitled to Equitable Tolling

Plaintiff argues that her 28-year-old tortious interference claim is not time-barred because Ms. Walters once—in 1983—"instruct[ed]" her to keep quiet. Opp. at 10–11. But Plaintiff alleges no threat, and certainly no repeated or continuing one, that would have prevented her from suing 25 years ago, or 10, or indeed ever. On Plaintiff's far-fetched theory, a single, long-ago alleged "instruction" removed her tortious interference claim from the statute of limitations indefinitely.

"Under Massachusetts law the doctrine of equitable tolling suspends a running statute of limitations if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit." *Bernier v. The Upjohn Co.*, 144 F.3d 178, 180 (1st Cir. 1998). "Personal character traits, educational history, and cultural backgrounds are usually immaterial in determining whether a lack of knowledge is objectively reasonable." *Koe v. Mercer*, 876 N.E.2d 831, 837 (Mass. 2007). "A party seeking to toll the statute must at the very least show that the

---

[2] Why the three-year limitations period forced "haste" is not entirely clear. Plaintiff alleges nothing that would have prevented her from "constructing her complaint" well in advance of the limitations period's end.

information could not have been found by a timely diligent inquiry." *Bernier*, 144 F.3d at 180 (emphasis omitted). Plaintiff does not argue otherwise.

Instead, Plaintiff asserts that she was directed not to investigate her expulsion, and that she complied. She argues that because Ms. Walters allegedly "instruct[ed] Nancy Shay to be silent" so as to avoid damaging their reputations, she is entitled to indefinite tolling. For this remarkable proposition, she cites no case; Ms. Walters is aware of no such principle of Massachusetts law—or any case in any jurisdiction that allows three decades of tolling for a single alleged instruction not to sue. Such a rule would excuse every plaintiff who is reminded by her defendant that litigation can be costly, whether to one's wallet or to one's reputation.

Moreover, even in those jurisdictions that allow true duress to toll limitations periods, it is generally held that the threat must be continuing if the limitations period is to be tolled continually, as Plaintiff seeks here. *Rakes v. United* States, 442 F.3d 7, 26 (1st Cir. 2006); *One Star v. Sisters of St. Francis, Denver, Colo.*, 752 N.W.2d 668, 682–83 (S.D. 2008); *Steo v. Cucuzza*, 624 N.Y.S.2d 203, 205 (N.Y. App. Div. 1995). And the duress alleged must be sufficient to deprive a reasonable person of her freedom to timely initiate suit. *E.g., Smith v. Estate of Kelly*, 778 A.2d 1162, 1173–74 (N.J. Super. Ct. App. Div. 2001). Yet Plaintiff alleges no such continuing threat; she alleges only a single statement, an "instruction" to refrain from suit, made nearly 30 years ago—nothing more and nothing since. There was nothing different on the day Plaintiff filed her complaint than there was a year ago, or a decade—or two. And there was never any action by Ms. Walters that would have made a reasonable person incapable of suing. *Cf., e.g., Stadtman v. Cambere*, 422 N.Y.S.2d 102, 103 (N.Y. App. Div. 1979) ("Threats . . . of physical violence," "termination of . . . employment," and countersuit are insufficient to

4

toll statute of limitations on ground of duress). Plaintiff was no more prevented from suing then than she is now.

## II. Plaintiff Is Not Subject to Personal Jurisdiction in Massachusetts Based on Her Employment by ABC in the Early 1980s

Plaintiff argues that personal jurisdiction in Massachusetts is proper with respect to her tortious interference claim because Ms. Walters worked for a national news program that broadcast in Massachusetts thirty years ago. Allegedly, because Ms. Walters "was a regular special contributor" to an ABC television program that broadcast in Massachusetts, and drew her pay from ABC, which had Massachusetts advertisers, she is subject to suit there for the claim that she caused Plaintiff's expulsion from a Connecticut boarding school. Of course, on plaintiff's theory, every journalist, novelist, and musician; every 20/20 writer, cameraman, and crewmember; indeed, every employee of ABC is subject to suit in Massachusetts for any and every claim. The theory is wrong for two reasons.

One, it ignores the nexus requirement of the Massachusetts long-arm statute. The jurisdictional statute Plaintiff cites afford personal jurisdiction only with respect to those claims "arising from" the relevant contact. Mass. Gen. Laws ch. 223A § 3. Plaintiff provides no such nexus. She offers only a tortured chain of irrelevant allegations: Ms. Walters allegedly instructed Plaintiff to keep quiet in order to preserve Ms. Walters' "name," and that "name" was important to 20/20's commercial success, including in Massachusetts; therefore, Ms. Walters is subject to Massachusetts jurisdiction. Opp. at 14. Of course, neither the statement alleged, nor 20/20's Massachusetts broadcast, is part of the tortious interference Plaintiff claims—Plaintiff concedes that the method of Ms. Walters' alleged interference "won't surface until the discovery phase of this action." Opp. at 12. She does not plead that the statement or Ms. Walters' television appearances had anything to do with it.

Two, Plaintiff's jurisdictional theory conflates Ms. Walters and ABC. The party doing business in Massachusetts was ABC—not Ms. Walters, ABC's employee. And Massachusetts courts recognize the distinction: Personal jurisdiction over a nonresident corporate officer, for example, may not be based on jurisdiction over the corporation itself. *Interface Group-Massachusetts, LLC v. Rosen*, 256 F. Supp. 2d 103, 105 (D. Mass. 2003). Every one of 20/20's employees "earned a large part of her income from 2020 [*sic*]." Opp. at 13. And every one was a "contributor" to the show. Opp. at 13. Is every one subject to personal jurisdiction in Massachusetts on that basis alone?

### III. The Softcover Name Change Limits the Class of Readers Who Could Have Identified Nancy to Hardcover Readers

Plaintiff introduces a new fact in her opposition: that the softcover printing of *Audition* changed "Nancy" to "Mary."[3] Ignoring that a motion for judgment on the pleadings is determined on the pleadings,[4] she argues from this that "a considerable and respectable class at *Knopf* thinks the statements and reference to Nancy *are* actionable." Opp. at 17. This is clever misdirection.

Properly understood, the issue is whether a sufficient number of *readers* could have identified "Nancy," not whether the publisher supposedly believed they could. Plaintiff concedes this elsewhere in her brief. Opp. at 15. Here, speculating about what the publisher thought, or why the change from "Nancy" to "Mary" was made, is irrelevant. Indeed, holding the change from "Nancy" to "Mary" against Ms. Walters would perversely discourage her and

---

[3] For the Court's convenience, the relevant pages of *Audition*'s softcover edition are appended as Exhibit A to the Declaration of Christopher Muller, filed August 8, 2011.

[4] This Court is afforded discretion here to ignore Plaintiff's new fact because it is outside the pleadings. *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).

others from acting appropriately to ensure subjects' non-identifiability,[5] and should therefore not even be considered by the Court.

Even more, the change only further undermines the defamation claim: It means that a reader would have to read the hardcover in order to have the benefit of even a first name with which to attempt to identify the plaintiff. The reader is otherwise left without Plaintiff's first *and* last names, the name of the school she was expelled from, or any other identifying detail. This diminishes significantly the already insignificant number of people who purportedly could have identified Plaintiff from *Audition*'s bare references. *Cf. Amrak Prods., Inc. v. Morton*, 410 F.3d 69, 72–73 (1st Cir. 2005).

If anything, the change of "Nancy's" name to "Mary" in the softcover only confirms the insufficiency of Plaintiff's claim.

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in Ms. Walters' opening memorandum of law in support of her motion for judgment on the pleadings, the complaint should be dismissed with prejudice.

---

[5] For this reason, the change is inadmissible to prove fault, and should not be considered. Rule 407 of the Federal Rules of Evidence excludes evidence of subsequent remedial measures offered for that purpose. The rule rests on two grounds: (1) "The conduct is not in fact an admission, since the conduct is equally consistent with injury by mere accident or through contributory negligence"; and (2) "a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Fed. R. Evid. 407 advisory committee's note. "The courts have applied this principle to exclude evidence of subsequent repairs, installation of safety devices, changes in company rules, and discharge of employees," *id*—and changes in subsequent printings of allegedly defamatory material, *World Boxing Council v. Cosell*, 715 F. Supp. 1259, 1267 (S.D.N.Y. 1989) (applying Rule 407 to exclude evidence of "a subsequent change in an allegedly libelous text").

Dated: New York, New York
August 8, 2011

        GIBSON, DUNN & CRUTCHER LLP

        By: /s/   Orin Snyder

        Orin Snyder (admitted *pro hac vice*)
        Christopher Muller (admitted *pro hac vice*)
        200 Park Avenue, 37th Floor
        New York, New York 10166-0193
        Telephone: (212) 351-4000
        Facsimile: (212) 351-4035

        Andrea Studley Knowles
        William F. Benson
        Sugarman, Rogers, Barshak & Cohen, P.C.
        101 Merrimac Street
        Boston, Massachusetts 02114
        Telephone: (617) 227-3030
        Facsimile: (617) 523-4001

        *Attorneys for Defendant Barbara Walters*

## CERTIFICATE OF SERVICE

       I hereby certify that on August 8, 2011, a true copy of the above document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

        /s/ Orin Snyder
        Orin Snyder (admitted *pro hac vice*)