# United States Court of Appeals
## For the First Circuit

———————————

No. 12-1494

NANCY SHAY,

Plaintiff, Appellant,

v.

BARBARA WALTERS,

Defendant, Appellee.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

———————————

Before

Torruella, Selya and Howard,
Circuit Judges.

———————————

Mark Ellis O'Brien on brief for appellant.
Orin Snyder, Gibson, Dunn & Crutcher LLP, William F. Benson,
and Sugarman, Rogers, Barshak & Cohen, P.C. on brief for appellee.

———————————

December 18, 2012

———————————

**SELYA**, **Circuit Judge**.  This is a tort case that pits a Massachusetts woman who claims to have been wronged against a nationally known celebrity.  Although the allegations of the plaintiff's complaint paint a poignant picture, we conclude — as did the district court — that the defendant is entitled to judgment on the pleadings.  Accordingly, we affirm.

## I.  BACKGROUND

Inasmuch as the district court decided this case by entering judgment on the pleadings, see Fed. R. Civ. P. 12(c), we rehearse the complaint's well-pleaded facts as if they were true, view those facts in the light most hospitable to the party opposing the motion (here, the plaintiff), and draw all reasonable inferences in that party's favor.  R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006).

In the early 1980s, plaintiff-appellant Nancy Shay attended Wykeham Rise, a boarding school located in Washington, Connecticut.  At the time (and presently), defendant-appellee Barbara Walters was a world-famous television personality and journalist. Her daughter Jackie attended Wykeham Rise.  Jackie and the plaintiff cultivated a friendship.  In 1983, the two young women engaged in conduct that resulted in the school suspending both of them.  The plaintiff alleges that the reason for this disciplinary action was that the two women were found arm-in-arm in the plaintiff's bed.

In the aftermath of her suspension, the plaintiff alleges that she and the defendant spoke by telephone.  As she recounts it, the defendant told her, "Don't say anything about this to anybody.  You'll ruin your name.  Never mind, you'll ruin my name and my daughter's name."

The school expelled the plaintiff, but not Jackie, later that year.  Following her expulsion, the plaintiff went into a "deep depression," which led to substance abuse and emotional instability.  She professes to have "generally lost her way" as her "life became a revolving door of rehabilitation centers, jails, and unhappiness."

We fast-forward to the year 2008.  At that time, the defendant published a memoir entitled Audition, which chronicled her life and career.  Chapter 38 deals with the defendant's relationship with her daughter and focuses specifically on difficulties encountered during the latter's childhood.  In this chapter, the defendant writes about her daughter's scholastic problems.  Her manuscript includes a reference to a friend of her daughter's at Wykeham Rise named "Nancy" "whom the school kicked out midterm for bad behavior."  It explains that "[Nancy] and Jackie had been found in the nearby town, high on God-knows-what."  The defendant adds that, in the wake of the suspensions, she "told the school that Jackie was never to be allowed to visit [Nancy] again."

When the plaintiff learned of these statements, she was living in Massachusetts.  She filed suit for money damages against the defendant in a Massachusetts state court.  The defendant, a citizen of New York, removed the case to the United States District Court for the District of Massachusetts based on diversity of citizenship and the existence of a controversy in the requisite amount.  See 28 U.S.C. §§ 1332, 1441.

The plaintiff's complaint contains three statements of claim.  Count 1 alleges that the defendant tortiously interfered with the plaintiff's contract with Wykeham Rise by inducing the school to expel her.  Count 2 alleges that the statements in Audition about her are defamatory.  Count 3 asserts a claim for negligent infliction of emotional distress premised on the same statements.

The defendant answered the complaint.  She then moved for judgment on the pleadings, see Fed. R. Civ. P. 12(c), contending that Count 1 was time-barred and that the remaining counts failed as a matter of law.  The district court granted the motion.  This timely appeal ensued.

## II.  ANALYSIS

The grant or denial of a motion for judgment on the pleadings engenders de novo review.  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012).  "In conducting this review, we accept the truth of all well-pleaded facts and draw all reasonable

-4-

inferences therefrom in the pleader's favor." Id.  Using this yardstick, we take the measure of the plaintiff's three claims.

Before proceeding further, we consider choice of law.  As a federal court sitting in diversity jurisdiction, we are constrained to apply state substantive law.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Here, however, events relevant to the plaintiff's claims occurred in Connecticut, Massachusetts, and perhaps elsewhere (e.g., where Audition was published). Ordinarily, these variations would create some doubt as to which state's law applies.  But the parties' briefs assume, albeit sub silentio, that Massachusetts law controls.  "Where[] the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to forgo independent [choice of law] analysis and accept the parties' agreement."  Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991); accord Jones v. Secord, 684 F.3d 1, 7 (1st Cir. 2012).  We follow that praxis here and proceed on the basis that the governing state law is the law of Massachusetts.

With this preface in place, we examine the three causes of action asserted by the plaintiff.

### A.  **Tortious Interference**.

In Massachusetts, there is a general three-year statute of limitations for tort actions.  Mass. Gen. Laws ch. 260, § 2A. "[T]he statute of limitations starts to run when an event or events

have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury." Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 741 (Mass. 1990). The doctrine of equitable tolling may postpone this date "if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit." Bernier v. Upjohn Co., 144 F.3d 178, 180 (1st Cir. 1998) (citing Protective Life Ins. Co. v. Sullivan, 682 N.E.2d 624, 635 (Mass. 1997)).

Wykeham Rise expelled the plaintiff in 1983. She did not file this suit until April of 2011 (more than twenty-seven years later). It is, therefore, obvious that, absent tolling, the suit is time-barred.

To bridge this temporal gap, the plaintiff labors to invoke equitable tolling. She argues that she had no notice of her injury until the 2008 publication of Audition, which she says made clear for the first time the defendant's motivations and potential involvement in her expulsion. The plaintiff insists that she was prevented from learning the truth earlier because of her alcoholism and the defendant's importuning to remain silent about what happened at Wykeham Rise.

This argument is unpersuasive. The plaintiff's complaint acknowledges that shortly after her expulsion from Wykeham Rise, a faculty member told her that her rights had been violated and offered her the services of an attorney who specialized in civil

-6-

rights.  The plaintiff knew of her injury (that is, her expulsion),
and the faculty member's offer put the plaintiff squarely "on
notice that someone may have caused her injury." Bowen, 557 N.E.2d
at 741.  A reasonably diligent investigation would, at that point,
have led to the discovery of information (to the extent that it
exists) regarding the defendant's involvement in the expulsion.

       The mitigating circumstances lamented by the plaintiff,
while regrettable, do not relieve her from the burden of conducting
a reasonable investigation.  The weight of authority teaches that
alcoholism is generally not a basis for equitable tolling. See 51
Am. Jur. 2d Limitations of Actions §§ 195, 209 (2011) (collecting
cases); see also Andrews v. Arkwright Mut. Ins. Co., 673 N.E.2d 40,
41 (Mass. 1996) (holding that equitable tolling is available only
when plaintiff is "excusably ignorant" or when defendant
"affirmatively misled" plaintiff).  Indeed, the plaintiff offers no
authority for the proposition that alcoholism, without more,
justifies tolling — and she does not embellish this claim in any
meaningful way.  By the same token, the defendant's plea for
silence, if made, was simply that: a plea.  It had no legal force
and, in all events, it cannot be said to have prevented the
plaintiff from discovering information "essential to the suit."
Bernier, 144 F.3d at 180.  If anything, the plea might have given
the plaintiff reason to suspect that the defendant was involved in
her expulsion from Wykeham Rise.

Statutes of limitations are critically important in the due administration of justice. They should not lightly be discarded. In this case, we discern no error in the district court's determination that the statute of limitations must be honored and that, perforce, the plaintiff's tortious interference claim is time-barred.

## B. __Defamation__.

We turn next to the plaintiff's defamation claim, which the district court rejected because the complaint did not allege the essential elements of such a claim.

To establish a defamation claim under Massachusetts law, four elements are required: (1) that "[t]he defendant made a statement, concerning the plaintiff, to a third party"; (2) that the statement was defamatory such that it "could damage the plaintiff's reputation in the community"; (3) that "[t]he defendant was at fault in making the statement"; and (4) that "[t]he statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss." __Ravnikar__ v. __Bogojavlensky__, 782 N.E.2d 508, 510-11 (Mass. 2003). In the case at hand, the district court found the second and third elements wanting.

The question of whether a statement is reasonably susceptible of a defamatory meaning is a threshold question for the court. See __Amrak Prods., Inc.__ v. __Morton__, 410 F.3d 69, 72 (1st Cir.

2005).  "A communication is susceptible to defamatory meaning if it 'would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community.'"  Id. (quoting Phelan v. May Dep't Stores Co., 819 N.E.2d 550, 553 (Mass. 2004)).  When making such a determination, the court must analyze the statement in light of the totality of the circumstances, including the "entire context of the publication."  Id. at 73.

        The district court concluded, as a matter of law, that the challenged statements were not defamatory.  It reached this conclusion on the basis that the tiny group of people who might recognize the plaintiff as the "Nancy" in Audition would also know the "truth" of the events that took place.

        The plaintiff's complaint lends credence to this assessment.  In it, the plaintiff acknowledges that the only individuals who could have associated her with the oblique reference in the book — her surname was never mentioned — were "former Wykeham Rise students" who happened to be there at the time.  Relatedly, the plaintiff acknowledges that these individuals know the truth surrounding her expulsion.  Accordingly, the statements in Audition could not have held the plaintiff up to opprobrium in the minds of this limited group because, as she asserts, these same individuals were "well aware of the injustice of her expulsion."

-9-

The plaintiff tries to blunt the force of this reasoning by positing that a more expansive segment of the population may have learned her identity thanks to investigative journalists who, after she sued the defendant, republished more detailed versions of the story in newspapers, tabloids, and blogs.  But there is a rub: the filing of the suit was the plaintiff's doing and, in all events, the republished statements were not made by the defendant. The republished statements, therefore, fail to satisfy the first element of the plaintiff's defamation claim.  See Meeropol v. Nizer, 560 F.2d 1061, 1068 (2d Cir. 1977).

As the district court noted, the defamation claim is equally vulnerable on another ground.  Where, as here, a motion for judgment on the pleadings "is employed as a vehicle to test the plausibility of a complaint, it must be evaluated as if it were a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Grajales, 682 F.3d at 44.  Although it is not necessary for the complaint to plead "detailed factual allegations," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernández v.

Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 680).

Plausibility determinations require a court to engage in a two-step pavane. See Grajales, 682 F.3d at 45. To begin, the court must strip away and discard the complaint's conclusory legal allegations. Id. Next, the court must determine whether the remaining factual content permits "the reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotation marks omitted).

In this case, the plausibility standard operates in conjunction with the substantive law of defamation. As a matter of constitutional bedrock, a plaintiff must show fault in order to impose liability upon a defendant for defamation. Gertz v. Robert Welch, Inc., 418 U.S. 323, 346-47 (1974). Short of imposing liability without fault, states may define appropriate standards regarding defamation of private individuals (such as the plaintiff). See id. at 347. Massachusetts has established such a framework. If a statement is true, the plaintiff must prove that the defendant acted with "actual malice" to recover. Mass. Gen. Laws ch. 231, § 92; White v. Blue Cross & Blue Shield of Mass., Inc., 809 N.E.2d 1034, 1036 n.4 (Mass. 2004). If, however, a statement is false, the plaintiff still must show that the defendant acted negligently. Stone v. Essex Cnty. Newspapers,

<u>Inc.</u>, 330 N.E.2d 161, 168 (Mass. 1975).  Either way, <u>some</u> showing of fault is essential.

Against this backdrop, we examine the statements at issue here.  We need not parse those statements to determine which may be true and which may be false.[1]  The common denominator is that the statements are not actionable unless the plaintiff's complaint sets out some plausible showing of fault (i.e., either malice or negligence).

While the plaintiff's complaint contains conclusory allegations about "ill-will" and "actual malice," it contains no factual assertions that in any way lend plausibility to these conclusions.  Similarly, the complaint does not contain any facts suggesting that the defendant acted negligently in publishing the challenged statements.[2]  In determining whether allegations cross the plausibility threshold, an inquiring court need not give weight

---

[1] At first blush, it appears that some of the challenged statements are arguably true (e.g., that "Nancy" was "kicked out" of Wykeham Rise for "bad behavior").  Others may very well be false (e.g., that the plaintiff and Jackie were "found in a nearby town, high on God-knows-what").

[2] In her appellate brief — which in any event is not to be considered as a source of new facts for the purpose of judging the propriety of a grant of judgment on the pleadings, see <u>NEPSK, Inc.</u> v. <u>Town of Houlton</u>, 283 F.3d 1, 8 (1st Cir. 2002); <u>Int'l Paper Co.</u> v. <u>Town of Jay</u>, 928 F.2d 480, 482 (1st Cir. 1991) — the plaintiff does state globally that the defendant owed a duty of care to her readers and was negligent in publishing the statements.  Here, too, she fails to identify any supporting facts.

to bare conclusions, unembellished by pertinent facts.  <u>See</u> <u>Grajales</u>, 682 F.3d at 45.  So it is here.

To sum up, the plaintiff's defamation claim succumbs on two grounds.  First, the challenged statements are, as a matter of law, not defamatory.  Second, the complaint contains no plausible allegations of fault.  Consequently, the district court did not err in granting the defendant's motion for judgment on the pleadings on the defamation count.

### C.  **Emotional Distress**.

The plaintiff's final claim is for negligent infliction of emotional distress.  The district court jettisoned this claim as derivative of the failed defamation claim.

The Supreme Court has made it pellucid that a failed defamation claim cannot be recycled as a tort claim for negligent or intentional infliction of emotional distress.  <u>See</u> <u>Hustler</u> <u>Magazine, Inc.</u> v. <u>Falwell</u>, 485 U.S. 46, 56-57 (1988).  Such an outcome is required by the Constitution.  <u>See</u> <u>id.</u> at 56.  In previous cases, we have acted upon this principle.  <u>See</u>, <u>e.g.</u>, <u>Amrak Prods.</u>, 410 F.3d at 73-74.

These authorities are dispositive here.  The plaintiff's claim for negligent infliction of emotional distress grows out of the same nucleus of operative facts that spawn her defamation claim.  The two claims are premised upon the same conduct and harm. They seek the same relief.  It follows inexorably that the failure

of the plaintiff's defamation claim pretermits continued prosecution of her claim for negligent infliction of emotional distress.  <u>See</u> <u>Hustler Magazine</u>, 485 U.S. at 56-57; <u>Amrak Prods.</u>, 410 F.3d at 73-74.  The district court's entry of judgment on the pleadings was, therefore, unimpugnable.

## III.   CONCLUSION

We need go no further.  For the reasons elucidated above, we uphold the judgment of the district court.

**<u>Affirmed</u>**.